IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    :          CASE NO. 08-04692 (ESL)
                                                          :
MIGDALIA VALLE HIRALDO                                    :
         Debtor                                           :          CHAPTER 13
                                                          :
_____                          :
                                                          :
MIGDALIA VALLE HIRALDO                                    :          ADVERSARY NO. 09-00152
                                                          :
         Plaintiff                                        :
                                                          :
         vs.                                              :
                                                          :
BANCO POPULAR DEPUERTO RICO                               :
                                                          :
         Defendant                                        :
_____                          :


OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment* filed by defendant Banco Popular de Puerto Rico (as servicing agent for Fannie Mae, hereinafter "BPPR") praying to be deemed a secured creditor and to deny the Debtor's request to have its secured credit voided (Docket No. 17). Also before the court is Debtor's *Opposition [Thereto] and Cross Motion for Summary Judgment* (the "*Opposition & Cross Motion*", Docket No. 35) seeking to void BPPR's mortgage, rendering it an unsecured creditor. For the reasons stated below, BPPR's *Motion for Summary Judgment* is granted, Plaintiff's *Cross Motion* is denied and the instant adversary proceeding is hereby dismissed.

Procedural Background

On October 10, 2000, the Debtor (along with her former spouse, Reinaldo Villegas Maldonado) executed Deed No. 428 before Notary Public Jesus M. Rivera Delgado to segregate and purchase a real property located at Lot #3, Block B, Hato Tejas Ward, Bayamon, Puerto Rico (the "Real Property"). Said Deed was filed at the Property Registry on September 15, 2003 at Entry No. 283 of the Daily Entries Book No. 447. See Docket Nos. 23, pp. 6-9, and 60, pp. 7-8 (Property Registrar's *Certifications* issued on March 5, 2010 and May 25, 2011, respectively, affirming that Deed No. 428 was filed on that date at that entry).

Also on October 10, 2000, the Debtor executed two mortgage deeds to secure two separate liens on the Real Property: (1) Deed No. 207 executed before Notary Public Ahmed Arroyo Romeu

to secure a first mortgage in favor of Champion Mortgage Corp. (which was subsequently assigned to BPPR) filed at the Property Registry on September 15, 2003 at Entry No. 284 of the Daily Entries Book No. 447 (the "*Mortgage Deed*"); and (2) Deed No. 429 executed before Notary Public Jesus M. Rivera Delgado to secure a second mortgage in favor of the Puerto Rico Public Housing Administration (the "PR Housing Administration") filed at the Property Registry on September 15, 2003 at Entry No. 285 of the Daily Entries Book No. 447. See Docket No. 16, pp. 10-11. Also see Docket No. 60, p. 8 (Property Registrar's *Certification* issued on May 25, 2011 confirming that both mortgage deeds were filed on that date at those entries).

On September 3, 2004, Debtor, along with several of her neighbors, filed a *Complaint* against the PR Housing Administration and the Commonwealth of Puerto Rico before the Court of First Instance, Superior Court of Bayamon (the "PR Court of First Instance"), Case No. D PE 2004-0752 (504), alleging that the defendants had not filed any of the executed segregation and purchase deeds for the registration of their properties at the Property Registry. Plaintiffs in that case, including the Debtor, sought a temporary and permanent injunction relief against defendants, as well as monetary damages. See Docket No. 16, pp. 41-59.

On March 1, 2007, R&G Mortgage Corp. ("R&G", now BPPR) filed an ordinary foreclosure *Complaint* ("demanda de ejecución de hipoteca por la vía ordinaria") against the Debtor and her former husband before the Court of First Instance, Superior Court of Bayamon, Case No. D CD 2007-0623 (503), alleging that the Debtor (and her husband) had defaulted on their mortgage payments. See Docket No. 36, pp. 7-9. On or about September 18, 2007, R&G (now BPPR) filed a *Motion* informing that its mortgage had not then been recorded at the Property Registry and thus requested the entry of a collection of monies judgment. See Docket No. 36, pp. 10-11. On October 8, 2007, notified and docketed on November 5, 2007, the PR Court of First Instance issued a *Collection of Monies Judgment* against the Debtor and her former husband, in the amount of $54,958.73, including principal, interests and late fees, $5,350.00 in attorneys fees and a fixed annual interest rate at 12.00%. See Docket No. 36, pp. 12-16. On December 6, 2007, R&G filed a *Motion* for a *lis pendens* lien on the Debtor's Real Property under Puerto Rico's former Civil Procedure Rule 56.4, 32

L.P.R.A. Ap. III R. 56.4[1], to which Debtor opposed on or about January 11, 2008. See Docket No. 36, pp. 17-19 and 20-21. On December 20, 2007, the PR Court of First Instance issued an *Order* granting the lien requested by R&G, and on January 8, 2008, issued the corresponding *Writ* of execution ordering the Property Registrar to record a lien over the Debtor's Real Property (Docket No. 36, pp. 24 & 25-26). On May 1, 2008, the PR Court of First Instance issued an *Order* to its Marshal to hold a public auction to sell the Debtor's Real Property in execution of the *Collection of Monies Judgment* (Docket No. 36, pp. 29-30). On May 16, 2008, the Debtor filed a *Motion* to set aside the *Order* authorizing the lien requested by R&G (Docket No. 36, pp. 31-33).

On July 21, 2008, the Debtor filed a Chapter 13 Bankruptcy Petition (Lead Case Docket No. 1).

On June 2, 2009, the Debtor, along with the rest of the co-plaintiffs in Case No. D PE2004-0752 (504), signed a *Stipulation of Judgment by Settlement* with the PR Housing Administration whereby plaintiffs would receive a total amount of $140,400.00 for all the alleged damages and defendants would take all the necessary actions to have all the purchase deeds filed and registered at the Property Registry within 6 months (Docket No. 16, p. 50-59). On June 12, 2009, notified and docketed on June 22, 2009, the PR Court of First Instance issued a *Settlement Judgment* approving said *Stipulation* (Docket No. 16, pp. 56-59).

On August 11, 2009, the Debtor filed the instant *Complaint* alleging that BPPR has not perfected its mortgage lien on her Real Property and therefore its Claim 2-1 should be reclassified as unsecured (Docket No. 1). On December 7, 2009, BPPR filed its *Answer to the Complaint* (Docket No. 11) alleging that a title search performed at that time revealed that the Property Registry had not notified any defects that could impair BPPR's *Mortgage Deed* and that the fact that a mortgage deed that has been filed but not yet not recorded, absent of a finding or notice of error in the mortgage deed, does not render BPPR an unsecured creditor.

On December 8, 2009, a pre-trial hearing was held in which the court granted the parties 60

---

[1] Puerto Rico's Civil Procedure Rules of 1979 were repealed through Act No. 20 of December 29, 2009, adopting the current Rules of Civil Procedure of 2009, which became effective on July 1, 2010. The citation of the current rule is 32 L.P.R.A. Ap. V R. 56.4. The amendment to Rule 56.4 does not vary the result of this *Opinion & Order*.

days to conclude discovery. A continuance was scheduled for March 5, 2010 at 9:30 a.m. (Docket No. 14).

On March 2, 2010, BPPR filed the *Motion for Summary Judgment* along with its *Statement of Uncontested Facts* (Docket Nos. 17 & 16, respectively). BPPR sustains that the *Mortgage Deed* was filed at the Property Registry on September 15, 2003, without the Registrar having notified any defects on it, which had been pending registration in the Property Registry's back-log ever since. Consequently, BPPR argues that pursuant to Sections 362(b)(3), 506 and 547 of the Bankruptcy Code and this court's decision in Soto-Ríos v. BPPR (In re Soto Ríos), 420 B.R. 57 (Bnkr. D.P.R. 2009)[2], it is a secured creditor.

On March 5, 2010, the continuation of the pre-trial was held and was continued without a date pending a decision on BPPR's *Motion for Summary Judgment*. Debtor was granted 20 days to file her opposition (Docket No. 18).

On April 12, 2010, BPPR filed a *Motion Submitting Documents in Support of [its] Motion for Summary Judgment* (Docket No. 23).

On June 21, 2010, Debtor filed her *Opposition & Cross Motion* for summary judgment along with its *Statement of ... Uncontested Facts* (Docket Nos. 35 & 36). The Debtor alleges that BPPR "abandoned" the execution of its mortgage foreclosure cause of action because since the *Mortgage Deed* had not registered at the Property Registry, it decided and requested from the PR Court of First Instance to only continue a personal collection of monies judgment instead (Docket No. 35, p. 9, referring to Docket No. 36, pp. 10-11). Based on the "abandonment" argument, the Debtor also purports that the *res judicata* doctrine precludes BPPR from foreclosing the Debtor's mortgage based on the decision by the Supreme Court of Puerto Rico in Banco de la Vivienda v. Carlo Ortiz, 130 D.P.R. 730 (1992). Additionally, and also following the "abandonment" premise, Debtor sustains that the PR Court of First Instance's *Order* granting the judicial lien is null because it was issued without a hearing contrary to the Puerto Rico Supreme Court's decision in Rivera Rodriguez & Co. v. Lee Stowell Taylor, 133 D.P.R. 881

---

[2] The decision was appealed to the District Court for the District of Puerto Rico and to the Court of Appeals for the First Circuit. See Soto-Ríos v. BPPR (In re Soto-Ríos), 662 F.3d 112 (1st Cir. 2011). The Court is aware that at the time that BPPR filed its *Motion for Summary Judgment* (Docket No. 17), the Opinion by the First Circuit had not been issued or published. The First Circuit affirmed this court's decision.

(1993).

On December 10, 2010, the Court issued an *Order & Notice* scheduling a hearing for February 8, 2011 to consider the motions for summary judgment and oppositions filed by BPPR and Debtor, which was subsequently rescheduled for May 11, 2011 (Docket Nos. 48, 50, 52, 54 & 55).  In that hearing, the court ordered the parties to inform the court whether the *Stipulation* in Case No. D PE2004-0752 (504) before the PR Court of First Instance had been complied with by the PR Housing Administration to ensure that the properties were recorded in plaintiffs' name, including the Debtor.

On July 12, 2011, BPPR filed a *Motion in Compliance with Order* (Docket No. 60) including an updated *Certification* issued by the Property Registrar on May 25, 2011 that reveals that BPPR's *Mortgage Deed* had been filed since September 13, 2003 and that no defects had been notified to that effect as to that date.

On September 7, 2011, the court issued an *Order* (Docket No. 64) for Debtor to show cause within 21 days why the instant *Complaint* should not be dismissed for failure to comply with this court's order of May 11, 2011 (Docket No. 58) and defendant BPPR's request (Docket No. 60).  On September 26, 2011, Debtor filed a *Motion to Show Cause* (Docket No. 66) alleging that the delay was caused by the inability of her attorney to obtain the evidence to reflect the status of the mortgage in question in the Property Registry, notwithstanding efforts directed to obtain the same, which was granted on October 3, 2011 (Docket No. 67).

On November 3, 2011, Debtor filed an *Informative Motion* (Docket No. 69) attaching the latest title search on the Real Property dated October 11, 2011, which reveals that the Property has been recorded to Debtor's name (and her husband Reinaldo Villegas Maldonado), along with BPPR's *Mortgage Deed*.  It also shows that the Property Registrar recorded a *lis pendens* and a judicial lien *Order* from the PR Court of First Instance dated February 14, 2008, both in favor of BPPR (Docket No. 69, pp. 2-3).

<u>Applicable Law & Analysis</u>

*Automatic Stay under 11 U.S.C. § 362(a)*

The automatic stay is one of the fundamental debtor protections in the Bankruptcy Code.  It provides the debtor with a "breathing spell" from creditors and it stops all collection efforts, all

harassment, and all foreclosure actions upon filing for bankruptcy. H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 340-342 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296-97. "It allows the debtor to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy." Id. The automatic stay prohibits "any act to create, perfect, or enforce any lien against property of the estate." 11 U. S.C. §362(a)(4). Despite the fundamental importance of the automatic stay, Congress has allowed certain exceptions to the automatic stay, such as those included under Section 362(b) of the Bankruptcy Code. See Soto-Ríos v. BPPR (In re Soto-Ríos), 662 F.3d at 116; 229 Main St. Ltd. Pshp. v. Mass. EPA (In re 229 Main St.), 262 F. 3d 1, 3-4 (1st Cir. 2001); Perez Mujica v. FirstBank, P.R. (In re Perez Mujica), 457 B.R. 177, 184-185 (Bankr. D.P.R. 2011).

*Exception to Automatic Stay under 11 U.S.C. § 362(b)(3)*

Section 362(b)(3) of the Bankruptcy Code provides an exception to the automatic stay, under subsection (a) of Section 362 of the Bankruptcy Code by allowing "any act to perfect, or to maintain or **continue the perfection of, an interest in property** to the extent that the trustee's rights and powers are subject to such perfection under Section 546(b) of this title." 11 U.S.C. § 362(b)(3) (emphasis added). "Section 362(b)(3) does not authorize the creation of new rights or interests for the creditor. Instead, it merely permits perfection, or maintenance or continuation of perfection, free of the automatic stay that would otherwise be applicable, under circumstances in which the creditor's action would be effective against a trustee." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 362.05[4] (16th ed. 2012). To qualify for this particular exception to the automatic stay, a creditor must satisfy the following three requirements: (*i*) an act to perfect; (*ii*) an interest in property; and (*iii*) under the circumstances in which the perfection-authorizing statute fits within the parameters of Section 546(b) of the Bankruptcy Code. Soto-Ríos v. BPPR (In re Soto-Ríos), 662 F.3d at 116; In re 229 Main St., 262 F. 3d at 5. Thus, Section 362(b)(3) depends on the limitations imposed on the trustee's avoiding powers pursuant to Section 546(b) of the Bankruptcy Code. The purpose of Section 546(b)(1) is to "protect, in spite of the surprise intervention of a bankruptcy petition, those whom State law protects by allowing them to perfect their liens as of an effective date that is earlier than the date of perfection." Alan N. Resnick & Henry J. Sommer, 5 Collier on

Bankruptcy ¶ 546.03[1] (16th ed. 2012) quoting S. Rep. No. 989, 95th Cong., 2nd Sess. 86-87 (1978), H.R. Rep. No. 595, 95th Cong., 1st Sess. 371-371 (1977).

Section 546(b)(1) exempts from the trustee's avoiding powers under Sections 544, 545 and 549 of the Bankruptcy Code "any generally applicable law that permits the perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C. §§ 546(b)(1)(A) & 546(b)(1)(B). "Thus, simply stated, if a creditor possesses a pre-petition interest in property, and state law establishes a time period for perfection of a lien based upon that interest, the 'lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of a bankruptcy' so long as it is perfected within the time period established by state law." Lincoln Sav. Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n), 880 F. 2d 1540, 1546 (2nd Cir. 1989), cert. denied, 493 U.S. 1058 (1990), quoting from Poly Industries, Inc. v. Mozley, 362 F.2d 453, 457 (9th Cir. 1966). "For a creditor to enjoy this haven, (1) the creditor must act pursuant to a law of general applicability; (2) that law must allow the creditor to perfect an interest in property; and (3) such perfection must be effective against previously acquired rights in the property." Soto-Rios v. BPPR (In re Rios), 662 F.3d at 116. "The gist of this exception is that the filing of a bankruptcy petition does not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have perfected its interest against an entity acquiring rights in the property before the date of perfection." Id. at 116 (quotations omitted).

*BPPR's Pre-petition Interest in Debtor's Real Property*

One of the requirements that BPPR must satisfy under Sections 362(b)(3) and 546(b)(1) of the Bankruptcy Code is that to demonstrate a pre-petition property interest in Debtor's Real Property. See Soto-Rios v. Banco Popular de P.R., 662 F.3d at 117-121.

The existence and extent of an entity's interest in property is dictated by local law. Soto-Rios

v. Banco Popular de P.R., 662 F.3d at 117.  A mortgage is a lien[3] and a"lien" is defined in the Bankruptcy Code as a "charge against or interest in property to secure payment of a debt".  11 U.S.C. § 101(37).  Puerto Rico Mortgage Law follows that trend applying the "lien theory", meaning that "the mortgage is a mere security for the debt, creating a lien interest without divesting the mortgagor of legal title during the period of the debt repayment".  Soto-Rios v. Banco Popular de P.R., 662 F.3d at 118.  Also see Article 155 of Puerto Rico's Mortgage Law, 30 L.P.R.A. § 2551; Liechty v. Descartes Sauri, 9 P.R. Offic. Trans. 660, 109 P.R. Dec. 498 (1980) (holding that a "mortgage" encompasses "a property right").

BPPR argues that it acquired a pre-petition property interest in Debtor's Real Property when it acquired the mortgage loan from Champion Mortgage Corp., evidenced by the Debtor's execution of a mortgage note incorporated into the *Mortgage Deed* on October 10, 2000, which was presented at the Property Registry on September 15, 2003, that is, about 6 years and 6 months prior to the Debtor's filing for bankruptcy.  See BPPR's *Motion for Summary Judgment* (Docket No. 17, pp. 11-21).  The Debtor does not dispute these facts.  Instead, she purports that BPPR "abandoned" its mortgage upon requesting from the PR Court of First Instance to only continue only the personal collection of monies cause of action instead of prosecuting the foreclosure of the mortgage in Case No. D CD2007-0623 (507).  See Debtor's *Opposition & Cross Motion* (Docket No. 35, p. 9, referring to Docket No. 36, pp. 10-11).  Debtor also argues that the *res judicata* doctrine precludes BPPR from foreclosing the Debtor's mortgage based on Banco de la Vivienda v. Carlo Ortiz, 130 D.P.R. 730 (1992).  Additionally, Debtor sustains that because BPPR "abandoned" its mortgage, it only holds a judicial lien over Debtor's Real Property and that the PR Court of First Instance's *Order* granting the judicial lien is null because it was issued without a hearing contrary to the Puerto Rico Supreme Court's decision in Rivera Rodriguez & Co. v. Lee Stowell Taylor, 133 D.P.R. 881 (1993).

The court rejects Debtor's argument that BPPR "abandoned" its mortgage when it sought a personal collection of monies judgment and a judicial lien over the Real Property.  Contrary to the

[3] See Black's Law Dictionary, 9th ed. 2009, p. 1101 (defining a "mortgage" as a "lien against property that is granted to secure an obligation".  Also see In re Endlich, 47 B.R. 802, 807 (Bankr. E.D.N.Y 1985) ("A mortgage is a consensual lien"); In re Acevedo-Vargas, 2012 Bankr. LEXIS 1701 at *14, 2012 WL 1345076 at *5 (Bankr. D.P.R. 2012) ("A mortgage is a lien and a "lien" is a security interest pursuant to 11 U.S.C. § 101(37)").

Debtor's contention, BPPR's motion for a personal *Collection of Monies Judgment* before the PR Court of First Instance does not constitute an abandonment of its *in rem* cause of action.  In Puerto Rico, an ordinary foreclosure action --like in the one initiated by BPPR before the PR Court of First Instance against Debtor-- is mixed in nature, meaning that "it is real and personal".  P.R. Prod. Credit Ass'n v. Registrador, 23 P.R. Off. Trans. 213, 222 (1989), 123 D.P.R. 231, 241 (1989), citing Widow of Carlo v. Toro, 99 P.R.R. 196, 212 (1970).  Both remedies are considered to be merged into "one single mixed claim" when they are sought against the owner of the mortgaged real property like the instant case.  P.R. Prod. Credit Ass'n v. Registrador, 23 P.R. Off. Trans. at 224, 123 D.P.R. at 245-246; First Federal Savings v. Nazario, 138 D.P.R. 875, 880-881 (1995).  A creditor seeking personal and *in rem* remedy within the ordinary foreclosure action may only continue with the personal collection of monies action as "it is perfectly lawful for a creditor to resort to a preventive measure as is the attachment to protect [its] rights and prevent the judgment from becoming ineffective".  P.R. Prod. Credit Ass'n v. Registrador, 23 P.R. Off. Trans. at 224, 123 D.P.R. at 244.  The First Circuit has adopted a similar posture.  For instance, in Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 71 (1st Cir. 2002), the Court of Appeals for the First Circuit ruled that the "greatest virtue" of Rule 56.4 of the Puerto Rico Rules of Civil Procedure is the "flexibility" upon which it must be interpreted instead of "mystifying it with technical concepts".  The only "limitation [to that flexibility] is that the measure be reasonable and adequate to the essential purpose of the same, which is to guarantee the effectiveness of the judgment which in due time may be rendered."  Id. at 71.

That is exactly what BPPR did before the PR Court of First Instance: take all the necessary steps to secure its judgment.  Ultimately, the remedy is one and the same: ordering the payment of the unpaid credit.  See First Federal Savings v. Nazario, 138 D.P.R. at 880.  Therefore, while BPPR awaited the Property Registrar to record the *Mortgage Deed* filed on September 15, 2003, it was entitled to seek a provisional collection of monies judgment and a judicial lien to secure it over the Real Property.  Such a course of action does not constitute an "abandonment" on its potential *in rem* mortgagor rights and subsequent execution mechanisms upon the registration of *Mortgage Deed* nor does it invalidate BPPR's secured credit in these proceeding.  Consequently, BPPR had a valid interest in the Debtor's Real Property.

9

Because the Debtor used the alleged "abandonment" of the mortgage as the main premise for its remaining arguments of *res judicata* and the nullity of the judicial lien (which Debtor's sustains is BPPR's only security interest over the Real Property), both are also denied.  Moreover, as of today, BPPR's *Mortgage Deed* has already been recorded at the Property Registry, as well as the *lis pendens* and a post-judgment pre-petition judicial lien in BPPR's favor as to the *Collection of Monies Judgment*.  See Docket No. 60, pp. 2-3.

*BPPR's acts to perfect its pre-petition property interest*

The second requirement for the exception of the automatic stay under Section 362(b)(3) of the Bankruptcy Code is "any act to perfect, or to maintain or continue the perfection, of an interest in property".  11 U.S.C. § 362(b)(3).  "[T]he filing of a bankruptcy petition does not automatically stay an act to perfect, the simultaneous post-petition creation and perfection of a lien may come within the pertinent exception to the automatic stay so long as the creditor holds a valid pre-petition interest in the property."  In re 229 Main St, 262 F. 3d at 9.  A "[c]reditor's pre-petition property interest in the real properties is based on taking all possible administrative steps ... in order for its property interest to be duly recorded by the Property Registrar so that their mortgage lien could become effective from the date the mortgage deeds were presented to the Property Registry pursuant to Article 53 of the Mortgage Law of Puerto Rico[4], 30 L.P.R.A. § 2256."  Soto-Ríos v. BPPR (In re Soto-Ríos), 420 B.R. at 69, aff'd at 662 F.3d 112.

Puerto Rico law regards the filing of a mortgage at the Property Registry to be a legally significant act that initiates the certifying role of the Property Registrar, begins the process of registration and operates as the decisive point for resolving any competing registrations in the same property.  See 30 L.P.R.A. § 2256; Soto-Ríos v. BPPR (In re Soto-Ríos), 662 F.3d at 121.  Registration will relate-back to the filing of the deed.  Id. at 121.

BPPR satisfies this requirement: it filed its *Mortgage Deed* for registration on September 15,

---

[4] Article 53 of the Puerto Rico Mortgage Law provides that "[r]egistered titles become effective for third parties from the date of their registration.  For all intents and purposes, the registration date, including the determination of the term needed for cancellation of entries must appear in the registration itself. In order to determine preference between two or more registrations of the same property, attention shall be given to the date, hour and presentation number of the respective titles in the Registry."  30 L.P.R.A. § 2256.

10

2003, which had been pending registration ever since without any notifications of defects from the Property Registrar. See the Property Registrar's *Certification* dated May 25, 2011 (Docket no. 60, p. 8). Therefore, the second prong is also met.

*Circumstances for the perfection-authorizing statutes within the parameters of 11 U.S.C § 546(b)*

The third requirement for the exception to the automatic stay to apply is that creditor meets the requirements set forth in Section 546(b)(1) of the Bankruptcy Code, namely: (*i*) that the creditor must act pursuant to the law of general applicability; (*ii*) that law must allow the creditor to perfect an interest in property; and (*iii*) such perfection must be effective against previously acquired rights in the property. The first two (2) elements established pursuant to Section 546(b)(1) were previously discussed under the requirements of Section 362(b)(3) of the Bankruptcy Code. As to this third requirment, there is no dispute regarding the general applicability of the Puerto Rico Mortgage Law and that its Article 53 has a specific relation-back provision which provides for the perfection of a creditor's secured interest (interest in property) to relate back to the date of presentation. 30 L.P.R.A. § 2256. This requirement consists of whether absent of the bankruptcy filing, the creditor could have perfected its interest against an entity acquiring rights in the property before the date of perfection. It is intimately related to Mortgage Law of Puerto Rico's relation back-provision, since any other liens or encumbrances presented or registered with a prior date to the filing of the bankruptcy petition but with a subsequent date to the dates the mortgage liens were presented would not take precedence over the mortgage liens based on the principle of *prior tempore potior iure*. See Ponce Federal Savings v. Registrador, 105 P.R.R. 563, 570, 105 D.P.R. 486, 492 (1976) ("The principle of register priority (*prior tempore potior iure*) compels the Registrar to handle the titles presented by the strict order of their presentation to the Registry.")

In this case, BPPR's *Mortgage Deed* has already been recorded by the Property Registrar as of October 11, 2011, which pursuant to Article 53 of the Mortgage Law, relates-back to September 15, 2003. See Docket No. 69, pp. 2-3.

*Avoidance Action under 11 U.S.C. §§ 544(a)(1) & 544(a)(3)*

Sections 544(a)(1) and 544(a)(3) of the Bankruptcy Code provide in their relevant parts that:

[t]he trustee shall have, as of the commencement of the case, and without regard to any

11

knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by– (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; ... (3) a *bona fide* purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a *bona fide* purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer]. 11 U.S.C. §§544(a)(1) & 544(a)(3).

The rights of a trustee under 11 U.S.C. § 544 are determined by state law. Abboud v. The Ground Round, Inc., 482 F.3d 15, 20 (1st Cir. 2007) (holding that Pennsylvania law determined the rights of a hypothetical lien creditor under 11 U.S.C. § 544(a)(1)). See also In re Santos & Nieves, Inc., 814 F. 2d 57, 61 (1st Cir. 1987) citing Carina Mercury, Inc. v. Igaravides, 344 F. 2d 397 (1st Cir. 1965). Moreover, the extent of the trustee's rights as a judicial lien creditor or a *bona fide* purchaser of real property is dictated by the state law of the jurisdiction governing the property in question. Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 544.03[1] (16th ed. 2012). The purpose of the trustee's avoiding powers is simply "to foster the equal distribution of a debtor's assets among its general non-priority creditors." Segarra v. Melendez-Osorio (In re Chardon-Rubero), 2006 Bankr. LEXIS 3912 at *8, 2006 WL 3909922 at *3 (Bankr. D.P.R. 2006). However, the trustee's avoiding powers under Section 544(a) are subject to Section 546(b) of the Bankruptcy Code, which provides an important exception to the trustee's avoiding powers since the same are subject to "any generally applicable law that permits" relation-back. Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 544.04 (16th ed. 2012). As previously discussed, this court concludes that BPPR satisfies the requirements under Section 546(b) of the Bankruptcy Code, thus falling within the exception to the trustee's avoiding powers pursuant to Section 544(a) of the Bankruptcy Code.

*Preferential Transfers under 11 U.S.C. §§ 547(b) & 547(e)(1)(A)*

Section 547(b) of the Bankruptcy Code allows the trustee to avoid, as a preference:

any transfer of an interest of the debtor in property– (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made–(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more that such creditor would receive if–(A) the case were a case under chapter 7 of this title; (B) the transfer had not been

made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b).

Section 547(e)(1)(A) provides that "a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a *bona fide* purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A). Moreover, Section 547(e)(3) establishes that "a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. §547(e)(3). Perfection as to real property depends entirely upon state law. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.06[1] (16 th ed. 2012). As discussed above, the applicable state law is Article 53 of the Mortgage Law of Puerto Rico, 30 L.P.R.A. § 2256, which has a relation back mechanism that establishes that mortgage liens become effective against third parties from the date the mortgage deeds were presented to the Property Registry. It is important to note that, "the entry of presentation is constructive notice to all the world until the document is recorded." Flores v. Arroyo, 43 D.P.R. 282, 283 (1932). Thus, in order for a *bona fide* purchaser to acquire an interest superior to BPPR's interest in these properties the same had to present to the Property Registrar for recordation a deed prior to the date in which BPPR presented its *Mortgage Deeds*, to wit, September 15, 2003. See Docket No. 16, pp.14-39, and Docket No. 60, p. 8. No such evidence exists in the docket of this case.

Conclusion

For the reasons stated above, this court finds that the actions by BPPR satisfy the requirements of Sections 362(b)(3) and 546(b)(1) of the Bankruptcy Code, thus falling within the exception to the automatic stay and the exception to the trustee's avoiding powers under Section 544(a) of the Bankruptcy Code. This court also concludes that Plaintiffs have not established the necessary elements of a preferential transfer under Section 547(b) and 547(e)(1)(A) of the Bankruptcy Code.

In view of the foregoing, BPPR's *Motion for Summary Judgment* is hereby GRANTED and Debtor's *Opposition & Cross Motion* for summary judgment is hereby DENIED. Therefore, it is now

ordered that the instant adversary proceeding be and is hereby dismissed.

Judgment shall be entered accordingly.

In San Juan, Puerto Rico, this 29th day of May 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge